Next case is Heritage Enterprises, Inc. v. Workers' Compensation Commission, 411-0016. Counselor, please. Good morning. David Milosavljevic, Petitioner, Counsel. I think the facts here really... Keep your voice up, please. I'm sorry. The facts here are pretty well not contested. We have an airplane that everyone can see was purchased not simply for business use, but also for the personal use of various people, including the decedent. I don't think there's any dispute at the time of his death, the decedent had volunteered to fly up to Wisconsin to pick up the children of Craig Hart, who was a shareholder, pick up one of his sons and daughter-in-law to fly them from Wisconsin to Kalawakee Airport, which is on the northwest side of the Chicago metropolitan area, for them to fly to Arizona, all as part of a vacation. The testimony is also clear, and I think the statements were that he was not... the decedent was not required... required is a critical word under the case. He was not required to fly. In fact, he enjoyed flying. Was he the boss? He was one of the owners. Whether he was the boss technically, there is a board of directors, and all corporations, of course, he was clearly a member of what, if we talk about evidence, would be the control group. He was a person who made decisions. But he also very clearly, the other bosses, if you will, all agreed he was not required to do it. There was no... this was purely a voluntary choice. That takes us out of the... there was some question raised as to the traveling employee, where you have to travel as part of the business, and you're required to do it. The word required is always there. Frankly, there is no... if this matter would stand, there is no distinction between personal and business. It's very clear, or respectfully, and I agree, you've got seven lines in the descent. And the descent, the descending opinion says very simply, he was not required, it was not business, it was personal. He was picking up the children of a shareholder to continue a vacation for a vacation purpose. It was a personal visit. It's a tragedy. Nobody's suggesting that the loss was tragic. But it's a personal loss to the family. And frankly, I could stand here and fail to use my eloquence as much as it may be, but that's really the point. And I think the brief sets it out fairly clearly. Again, it's not... it is a de novo standard, but there's really no factual dispute. If you look at the decision of the commission, and again, the descent says it all, I'm sorry, we're dealing here with a set of facts that really do not lend themselves to any other finding other than this was personal business. And again, there is no dispute that the plane was available for personal use. It's unrebutted testimony. And that he enjoyed flying, which is fine. Some people do, but again, it's more a hobby and a passion rather than a business. What's the claimant seeking in damages, or not damages, but benefits under the Act? $4,200 in funeral expenses? The funeral expenses, and to be honest, Your Honor, I apologize. That's never been in dispute, so I'd have to go back and check the record. I could make it up, but I prefer not to do that. And just death benefits, right? Death benefits, yes. As far as the exact numbers, I'll defer to opposing counsel. She may have a much better hand on it. I honestly don't recall. And he was President and CEO of Spend and Nursing Home Company? Yeah, my understanding is Heritage does... We were just talking about that. Some of us were worried about it. They provide apparently everything from limited care to full care throughout the state of Illinois. And again, there's no question that the aircraft was used for business purposes from time to time. They had facilities throughout Illinois. There's also no dispute that this had nothing to do with it. This didn't benefit the business at all. It had nothing to do with this. Again, it's fly up, pick up not even a board member, but pick up the children of a shareholder who are on vacation to have them hooked up with other children to go out to Arizona to complete the vacation. Again, it's a personal tragedy. Very respectfully, I don't think it was business. I think the dissent is correct. Was he the only one killed? No. Unfortunately... But there was a co-pilot. It was on takeoff. Yeah, I think it was. And unfortunately, it's a former pilot. It's usually for captains. It's not even necessarily for autorotators. It's a piloting interest. What would be your response to this argument? The employer has an agreement with the decedent that the decedent is going to provide air travel as a pilot for the employer in a business assignment as well as picking up shareholders. Could there be such an arrangement? Here there wasn't. Could there be? I suppose there could. Here there wasn't. Again, he's picking up the children of a shareholder. No dispute that it was not even arguably business. The activity that he was furthering was not business. Right, I think that's correct. In theory, yes, Your Honor. But here we have to speculate. There's no evidence in the record that it was the company policy. If the Court has no further questions, I thank you for your time and I ask for your release. Thank you very much. May it please the Court, Counsel. My name is Dawn Wall and I represent Rose Stottle who is the widow of the decedent Joe Warner. And I would assert, Your Honors, that the manifest weight standard is the standard that applies in this case. There were undisputed facts, but there are certainly inferences that were drawn from those facts. Your Honor just posed a scenario, would this be a compensable claim in the event that it was a minority shareholder who was being picked up? It was in this case. Bruce Hart was a minority shareholder of Heritage Enterprises. All of the evidence that was considered at arbitration and also by the Commission clearly established that Joe Warner, who was the CEO of the company, not an owner of the company, followed all the directions of the majority shareholder and Chairman of the Board, Craig Hart. Craig Hart, prior to the Sunday morning, July 21st, 2002, asked Joe Warner to carry out his request, which was to make arrangements for the company plane to fly to Cable Union, Wisconsin to pick up the minority shareholder. Bruce Hart and his wife, Nadine, and then take them on a family trip. All of the evidence clearly established at arbitration and before the Commission was that Joe Warner, who had worked for Heritage for since 1969, was the only pilot rated employee.  and assignments was to facilitate air travel for the corporation. He was not a shareholder? Was the purpose of the trip business related? The purpose of the trip, by Craig Hart's own testimony and Steve Wanamaker, who was the CEO at the time we tried the case, testified that any trips that the plane made had an underlying legitimate business purpose. And that would be what, where there's a family vacation? No, it was to provide travel for the majority shareholder and also to allow their CEO the opportunity to communicate with shareholders when he was traveling to act as a pilot in making the travel arrangements for the corporation. And clearly the majority opinion at the Industrial Commission found there was this that all of their flights for that plane were legitimate business flights. All of the expenses, the tie-down fees, the gasoline, everything was paid through the corporation for this plane including when there were personal flights made. And we have Joe Warner who responded all of his day to requests of the majority shareholder requests of the other director and the majority shareholder, Craig Hart, testified certainly it was within Joe's purview to make a decision whether he flew the plane and brought a safety pilot with him or whether he contracted with Image Air, a local facility in Bloomington, to pilot the plane. That was certainly within Joe's discretion to make those decisions and counsel indicates there's an issue about whether he was required to fly. It clearly was his free choice, but as the Commission found, based on the reasonable inferences that they drew from the evidence, it was certainly within the purview of Joe Warner as the only pilot of Heritage to make the decision to follow the request of his boss and pilot the plane regardless of the destination. And in fact the Commission specifically found in their opinion that the underlying purpose of the trip was not significant because Heritage, the respondent in this case, treated every single flight that was made by that aircraft as a business flight. But didn't the majority shareholder testify that they preferred the Joe Warner pilot of the plane? That is correct, Your Honor. In fact, when I asked Mr. Hart that question, he said, well, other people could have flown it, but we liked it best when Joe flew us. And so I pressed Mr. Hart, well, why was that? Joe loved to fly, we wanted our CEO happy, we engaged and enjoyed our opportunity to have him fly us. And in fact, Craig Hart and Steve Wanamaker, the new CEO, both testified that any time that the aircraft transferred from one location to another, it was always Joe who flew them or Joe arranged for the pilot. And in that instance, the Commission took all that information, which I would assert to Your Honors was factual information and they drew the inferences too, that the dual capacity doctrine applied and that the traveling employee exception applied because certainly if Joe Warner was going to fulfill the request of Craig Hart, his boss, then he would be required to leave Bloomington Normal, which was the principal location of the company. I would suggest that the traveling employee exception does require that the employee travel away, but it's a necessity requirement as opposed to I'm ordered that I have to do it or I'll be terminated. In this instance, Joe Warner was the only employee who was a pilot and he also was the only employee in charge of managing the flight facility for Heritage Enterprises. There was also factual testimony offered through the testimony of Craig Hart and Steve Wanamaker that Joe Warner utilized this plane all the time in their ordinary business. They had 35 facilities throughout the state of Illinois and aviation travel was a material part of their business and Craig Hart testified when he was the chairman of the board that they expended the funds from a business standpoint because it made their business stronger, it made their CEO stronger and I would assert to Your Honors that the testimony from those two individuals, the president and the chairman, this flight would not have occurred but for the fact that the chairman of the board asked Mr. Warner to go and pick up a minority shareholder. That in and of itself I would assert to Your Honors supports the findings of the Industrial Commission and the application of the dual capacity document. Clearly the arbitrator found here that Mr. Warner was carrying out worker functions as opposed to his corporate officer functions and I don't think there's any question of law that that doctrine was misapplied and I would further assert with regard to the traveling employee exception. I don't think that there's any issue that that particular law was correctly applied to the facts. So I would go back to that I do believe that the appropriate standard of review in this instance is manifest weight. There clearly is evidence in the even more specifically enhanced the findings of the arbitrator and specifically found long before this accident occurred, Respondent Heritage had embraced a practice that any of their flights had a legitimate business purpose. Certainly the dissenting commissioner, she might have felt that maybe from an IRS standpoint or from a write-off standpoint it wasn't a legitimate business interest, but the testimony, the admission that we have out of the mouth of the chairman of the board is that we treated every flight that Joe made as having a legitimate business purpose. And on that basis I believe the decision of the arbitrator, the decision of the commission confirming the arbitrator and the decision of the circuit court finding that the manifest weight standard with the appropriate standard should all be affirmed by this court. Thank you. What we have here is a company saying we have decided this is a business purpose, we have announced this is business. And correct, the IRS if you say well picking up somebody to fly out on a vacation and having the company pay for the fuel for the vacation and the transport is not business, it's personal. And that's exactly what we have here. The only evidence supporting what we have here is the commission saying if this company says everything that we do with this airplane is business therefore it's business. They say at the same time he enjoyed flying. He loved it. They admit that some of the trips were personal. But now what we're hearing is the company and that's what they said, every time this airplane is used for anything we pay for, we consider it business. And yes, the IRS clearly would have said absolutely not. This is no more than if I want to write off my vacations and I run it through my practice I'm going to have the IRS in there saying nice try Dave. And that's exactly what we have here. And to say well he's a minority shareholder so his vacation becomes part of Heritage's business. I'm sorry but no. It makes no sense from a standpoint of work. That's not part of work. All you have here in Consul is correct. It's a conclusory statement of his friends. And there's nothing wrong with that. I'm sure they want to help him. Every time this airplane is used if it was transcontinental and we flew it out to Washington to go skiing that's business. Even if those trips are people who are just minority shareholder not even them. Their family. Everything we pay for their families. This is not going to fly, no pun intended with the government if an employee deadheaded along. Would that be business? Hardly. Well we like to fly our employees all over on their vacations even though we don't pay them and we let them. Also note the testimony here was Joe primary duty was CEO not pilot. They had pilots. They had professional pilots very frankly. We don't begin in statistics on the rate of accidents for private pilots particularly part-time pilots flying large multi-turbo-prop aircraft. That's why you have professionals doing it. The testimony here is clear. Imgur had trained professional full-time pilots. This wasn't a man's hobby. I'm sorry. It's a tragedy. But to suggest that the definitive factor here is the company calls it. That's all you're going to find in this record. The company said every time that airplane is used no matter what it's business. But at the same time they say well yes it can be used for personal use. What's personal use? There isn't any according to the same definition. So again I thank you for your time and I would ask this meeting to close. Thank you very much.